## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **COURTLAND C. PITTS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 05-0185-JJF** |
| | ) | |
| **CPL. GREGORY SPENCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S  REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

The defendant, Corporal Gregory Spence of the Delaware State Police, replies as follows to the Answer of the plaintiff, and in support of his Motion for Judgment as a Matter of Law pursuant to Rule 50(b), and in the alternative for a New Trial, as to liability and damages, pursuant to Rule 59:

### Nature and Stage of the Proceedings (Counterstatement)

The plaintiff alleges in his answering memorandum that the defense motion "takes issue with all prior decisions in an attempt to avoid an adverse verdict".[1]  Despite the reference to "all prior decisions", the only decision referenced in the plaintiff statement is the parties' stipulation to use the defense form of verdict interrogatory to the jury.  The defense did not contest the decision to utilize the verdict form adopted by the Court, nor the Court's response to a jury note indicating difficulty with the verdict form.[2]

---

[1] Plaintiff's Answering Memorandum (hereinafter  "PAM") at 1.
[2] Transcript Volume III, at 94-99.  The defense did express concern that "a simple response might mislead [the jury] in their deliberations".  (III,95)  The defense also pointed out that the jury had heard essentially the same argument as to all of the claims, and thus would have no logical reason to differentiate between them.  (III, 95)

However, this agreement as to form cannot be equated, as the plaintiff seeks to do,[3] with a waiver of the right to contest an inconsistent verdict.[4]  Defense counsel could not waive his client's right to object to a verdict that had not yet been rendered by the jury.  Such a purported "waiver" would require clairvoyance.  Rather, the defense in moving for a new trial on liability was merely reacting to a mixed, and internally inconsistent, verdict, as reflected in the responses to the agreed-upon curative or supplementary instruction given.

When the jury was unable to reach a verdict without further guidance, the Court was called upon to fashion a solution, with the participation of counsel, to deal with the jury question.  The agreed-upon solution asked the jury to identify its findings as to each of the four claims asserted, based on the instructions previously given and the evidence in the case.  This means that a finding of probable cause to arrest Pitts was essential to the defense verdict reached on the false arrest claim, as lack of probable cause was an essential element of that claim.  With the admissions by Pitts in his testimony, and the lack of evidence to support the arrest of Wykpisz, there was no basis in fact or law for the verdicts in favor of the plaintiff on the equal protection and illegal search claims.

## **Counterstatement of Facts**[5]

The memorandum in support of the defense post-trial motions sets forth the numerous admissions made by the plaintiff at trial.  For example, as set forth herein, Pitts admitted conduct that would constitute disorderly conduct, assault, menacing, and

---

[3] PAB at 2, 19.

[4] The defense did express concern that "a simple response might mislead [the jury] in their deliberations".  (III,95)  The defense also pointed out that the jury had heard essentially the same argument as to all of the claims, and thus would have no logical reason to differentiate between them.  (III, 95)

[5] The defense post-trial motion was filed before the trial transcript was available.  The defense has added citations to the record to supplement the argument in this reply memorandum.

criminal trespass.  The plaintiff is bound by these admissions, and the Court should consider these facts as established, for purposes of ruling on the defense motions.

The jury was properly instructed to consider "the facts and circumstances available to Corporal Spence"[6] for purposes of evaluating the actions of the police officer in light of Pitts' allegations in this lawsuit.  The fact issue requires that the Court focus on what Cpl. Spence knew at the scene, through his investigation.  Testimony of Pitts at trial is irrelevant to this determination, because it is undisputed that Pitts failed to provide any information to the officer at the scene, and because Pitts' could not testify concerning conversations with the officer that he did not hear.  Therefore, the testimony of Mr. Mitchem and Mr. Wykpisz, concerning what they told Cpl. Spence, as well as the testimony of Cpl. Spence as to what they told him, should be accepted by the Court as true, since it also is uncontradicted.  This testimony includes, for example, information concerning the threats of harm made by Pitts against Mitchem and Wykpisz.  The plaintiff, unable to raise any factual issue as to what he officer learned at the scene from others, is likewise bound by this undisputed testimony.

### __The jury found that Cpl. Spence had probable cause to arrest Pitts.__

The jury was instructed as follows on the Fourth Amendment protection against unreasonable searches and seizures:

> Now, an arrest of a citizen is a seizure, and the 4th Amendment prohibits police officers from arresting a person unless there is probable cause to do so.  To determine whether the arrest was unreasonable in this case, you must decide whether Corporal Spence has shown that the arrest was justified by probable cause.[7]

---

[6] III, 84, lines 11-15.
[7] III, 84, lines 5-10.

The jury was instructed that the claim of false arrest had three distinct elements.[8]  The first two elements were not contested by the defense, and the evidence clearly established that Pitts was handcuffed and placed in the police car.  Cpl. Spence admitted that he detained Pitts, thus acknowledging a "seizure" of his person.  Only the third element of the false arrest claim was at issue:  whether the seizure of Pitts was reasonable.  And, per the instruction quoted above, the jury's determination of the reasonableness of that seizure depended entirely on whether Cpl. Spence acted with probable cause.  The jury found that Pitts failed to prove that the seizure was unreasonable.  The jury thus unequivocally found that Cpl. Spence had probable cause to arrest Pitts.  No other interpretation is possible, under the instructions as given.

As further evidence of its deliberations and findings, the jury rejected the claim of malicious prosecution.  A lack of probable cause was also an essential element of that claim, as the jury was instructed.[9]  Having found that the defendant failed to prove that the officer lacked probable cause, the jury did not reach the second, "malice", element of the malicious prosecution claim.

### The claim of an illegal seizure of Pitts under the Fourth Amendment was implicitly rejected by the jury in finding probable cause for his arrest.

The instruction as to "reasonableness" and probable cause, quoted above, also applied to the seizure of person aspect of the Fourth Amendment claim.  The jury was instructed that a finding of illegal seizure under the Fourth Amendment required proof that the arrest of Pitts was "unreasonable".  The instruction was the same, for purposes of the false arrest claim and the Fourth Amendment seizure claim.  The defense verdict on

---

[8] III, 83, lines 17-25; 84, line 1.
[9] III, 85, lines 9-10.

the false arrest claim means that the jury could not have based its verdict in favor of the plaintiff on the <u>seizure</u> aspect of the Fourth Amendment claim.  The jury could only find an illegal <u>seizure</u> if it found that the officer lacked probable cause. In rejecting the false arrest claim, and finding that Cpl. Spence had probable cause to arrest Pitts, the jury necessarily found that the arrest – the seizure of Pitts – did not violate the Fourth Amendment.  That left only the illegal <u>search</u> aspect of the Fourth Amendment claim, relating to the vehicle inventory, which is discussed below.

**<u>The jury finding of probable cause necessary to the defense verdicts cannot be reconciled with the verdicts on the illegal search and Equal Protection claims.</u>**

As set forth in the memorandum in support of the defense post-trial motions,[10] the jury finding rejecting the false arrest and malicious prosecution claims narrows considerably the scope of the remaining claims.  The only remaining ground under the Fourth Amendment claim would be the routine inventory search of Pitts' vehicle.  As set forth below, the plaintiff has failed to identify any facts that would support the jury finding of an illegal search, and thus the plaintiff verdict on the Fourth Amendment claim cannot stand.  The allegation of discrimination under the Equal Protection Clause of the Fourteenth Amendment has also been circumscribed by the jury finding of probable cause.  The sole remaining grounds alleged by the plaintiff involve [1] a comparison, unsupported by the caselaw, of the charges brought against Pitts (which the jury has found were supported by probable cause) and Mitchem; [2] the contention that Daniel Wykpisz should have been arrested, despite the lack of probable cause to do so; and [3] the argument that Mitchem's vehicle should have been searched.  These arguments will

---

[10] Defense Motion at 17-18.

be dealt with below.  Suffice it to say at this point that none of them finds factual support in the record, and therefore the jury verdicts for the plaintiff cannot be reconciled with the defense verdicts.

The plaintiff tries to avoid the consequences of the inconsistent verdict in this case, and cites *Carrasca v. Pomeroy* 313 F.2d 828, (3d Cir.2002) for the proposition that the jury was free to consider the Equal Protection claims under a "wholly separate analysis" form the Fourth Amendment claims.[11]  That approach would be appropriate in a "profiling" case like *Carrasca,* where the fundamental claim was that the plaintiffs, who were technically guilty of trespassing after hours, were only arrested because they were Hispanic.  The fact that the rangers who made the arrest had probable cause did not end the inquiry, where they arrested only the members of a protected class.  Had Corporal Spence failed to arrest Mr. Mitchem, the defense agrees that the Equal Protection claim would have survived the finding of probable cause to arrest Pitts.  Pitts, under that scenario, would have had a surviving claim of differential treatment.  However, this case is readily distinguished, in that there is no evidence of "profiling" or of differential treatment.  The officer arrested both the member of the protected class and the individual who could claim no such status.

The holding in *Christopher v. Nestlerode,* 240 Fed. Appx. 481, 489 (3d Cir.2007), relied on by the plaintiff, can readily be distinguished on its facts.  This was another "profiling" case, based on the stop of an African-American off-duty state trooper for speeding.  In the profiling context, racial discrimination may be shown, even where there was probable cause to stop, if the evidence is that only racially-identifiable speeders were

---

[11] PAM at 17.

stopped.  This case could only apply here, if Pitts, and not Mitchem, had been arrested.

Instead, Corporal Spence arrested the two individuals he had probable cause to arrest,

regardless of race.  As there was no differential treatment here in terms of arrest, another

profiling case offers no support to the plaintiff argument that the jury finding of probable

cause is irrelevant to the defense motion.

In *Mosley v. Wilson,* 102 F.3d 85, 96 (3d Cir.1996), another case relied on by the

plaintiff,[12] the Court found that a new trial, rather than judgment for the defendant, was

the appropriate remedy in the face of an inconsistent verdict.  The defendant here has

requested a new trial on liability, in the event the Court does not see fit to grant the Rule

50(a) motion that was reserved at the conclusion of the plaintiff's case, or the Rule 50(b)

motion notwithstanding the (inconsistent) verdict.  Contrary to plaintiff's claim, the

Court, having reserved decision, retains the authority to grant any such application.[13]

### There was no evidence to support the claim – or the jury verdict - that the routine inventory search of Pitts' vehicle violated the Fourth Amendment.

Pitts argued, ultimately unsuccessfully, that the inventory search of his vehicle

was improper, because the officer lacked probable cause to arrest him.  The jury rejected

that claim, in reaching verdicts for Cpl. Spence on the claims of false arrest and malicious

prosecution.  The plaintiff failed to prove that the arrest was 'unreasonable", and the jury

found that the arrest – the seizure of the person - was supported by probable cause.  Since

the Fourth Amendment claim raised the issue not only of seizure of the person, but also

---

[12] PAM at 17, note 5.

[13] The notion of a compromise verdict, for which the plaintiff cites *Montgomery County v. Microvote Corp.,* 320 F.3d 440 (3d Cir.2003), a breach of warranty case, cannot be applied here.  Nor does a verdict form in a patent case, PAM at 18, offer any guidance to the Court here.

search of the vehicle, the remaining issue for the Court is whether there was credible evidence in the record to support a claim of illegal search, where the arrest was supported by probable cause.

Pitts now argues, *nunc pro tunc*, that Cpl. Spence should have searched Mitchem's vehicle on April 3, 2003, because Pitts testified on March 10, 2009 that he was threatened with a gun.[14]  On its face, this is a ridiculous argument on which to base a claim of differential treatment.  The record is clear that neither Pitts nor anyone else at the scene on April 3, 2003 gave any such information to Cpl. Spence.  The officer thus lacked any basis whatsoever to search Mitchem's vehicle.  The vehicle, so far as we know, was parked at Mitchem's body shop.  When Mitchem was arrested, there was no need to remove the vehicle by towing it, and thus no need to inventory it.[15]

The plaintiff also argues, without citation of legal authority, that the vehicle inventory was illegal because it was "pre-textual".[16]  In *Lively v. State,* 427 A.2d 882, 883 (Del. 1981), the Delaware Supreme Court held that a police officer was fully justified in conducting an inventory of a vehicle prior to its towing and impoundment.  The Court pointed out that the United States Supreme Court had previously upheld the police use of routine automobile inventory searches as reasonable under the Fourth Amendment, in *South Dakota v. Opperman,* 428 U.S. 364 (1976).  There is no evidence in this record that

---

[14] PAM at 8.

[15] There was no "flip-flop" in the testimony of Cpl. Spence.  PAM at 8.  That is a mischaracterization of what he said.  II, 125, lines 18-25. He simply misunderstood the question, as is plain from a fair reading of his testimony.  "No, I'm sorry.  I was worried. I guess I misunderstood.  I guess I was worried about Mr. Pitts' car getting damaged.  I was not worried about Mr. Mitchem's car.  Because after Mr. Pitts would be arrested, he was told to have no contact with the business, and so there would be no need to go back there."  II, 126, lines 1-8.  A simple misstatement, quickly corrected, does not justify an attack on the officer's credibility, let alone resuscitate a moribund Equal Protection claim.

[16] PAM at 16.

the officer conducted the inventory as a pretext for locating incriminating evidence.  In fact, he found no such evidence.  As he testified, without contradiction, his intent was merely to safeguard the vehicle and its contents, prior to its removal, pursuant to standard police procedure.  This is precisely the approach upheld in *Lively* and *Opperman.*

The unrebutted testimony was that Pitts failed to make arrangements for another person to retrieve his vehicle, which was located on private property, outside the body shop.[17]  The defense presented evidence (uncontradicted) as to the policy regarding the inventory, towing,[18] and storage of vehicles, and Pitts failed to present any evidence of a deviation from this policy.  Pitts further failed to provide any facts that would support a finding that Mitchem's vehicle should have been towed from the body shop under the police policy.[19]  It ill suits plaintiff counsel, in the guise of advocating respect for Fourth Amendment rights, to advocate what would clearly have been an illegal search of Mitchem's vehicle, without a shred of probable cause.

## Once the jury found that Pitts' arrest was supported by probable cause, there was no evidence to support the claim – or finding – of discrimination.

The plaintiff admits that his burden was to prove that he was not treated similarly to Mr. Mitchem, after both were admitted participants in a fight at the body shop.  The plaintiff concedes that both Pitts and Mitchem were charged, booked, released on bail, and prosecuted.  Those facts alone distinguish this case from the racial "profiling" cases relied on by the plaintiff, which involve the arrest only of members of a protected class, and the failure to arrest others, despite the existence of probable cause.  The plaintiff has

---

[17] II, 123, lines 2-17.
[18] II, 121, lines 19-25; 122, lines 1-3.
[19] II, 125, lines 6-17; 126, lines 4-8.

further admitted that he never told Cpl. Spence anything about the fight.[20]  Yet he bases

his claim of differential treatment on the particular charges brought by Cpl. Spence.[21]

   The plaintiff fails to cite any case which holds that, where two participants in an

altercation are each arrested and prosecuted on multiple charges, a difference in the

number or type of charges can form the basis for an Equal Protection claim.  The defense

submits that there is no case law to support such a claim.  *Carrasca v. Pomeroy, supra* at

830-831,[22] was a racial profiling case in which a number of Hispanic individuals were

arrested by a park ranger for swimming in a state park, allegedly after hours.  There is no

evidence that any other individuals, not members of a protected class, were also arrested,

as in the present case.  The holding offers no support for Pitts.  This is not a profiling

case.

   The plaintiff, lacking viable arguments to explain the jury verdicts, questions the

thoroughness of the officer's investigation, and criticizes the completeness of his report,

---

[20] The plaintiff points to his testimony at trial that he was "scared and threatened" by
Wykpisz.  PAM at 5 fn 2.  However, the plaintiff admits that he never made such a
statement to Cpl. Spence at the scene.  Pitts' testimony at trial is irrelevant to the issue of
the officer's investigation at the scene.
[21] There is no evidence to support the plaintiff's claim that Cpl. Spence "waived" his
right to assert the defense commonly known as "qualified immunity".  PAM at 19-20.
The argument made in defendant's motion, at 21-23, echoes the instruction given by the
Court:  "To determine whether probable cause existed, you should consider whether the
facts and circumstances available to Corporal Spence would warrant a prudent police
officer in believing that Mr. Pitts had committed or was committing a crime.  Probable
cause requires more than mere suspicion.  However, it does not require that the police
officer have evidence sufficient to prove guilt beyond a reasonable doubt.  The standard
of probable cause represents a balance between the individual's right to liberty and the
Government's duty to control criminal activity.  Because police officers often confront
ambiguous situations, room must be allowed for some mistakes on their part.  But the
mistakes must be those reasonable police officers."  III, 84, lines 11-24.
[22] Cited in PAM at 7.

as if a denial of Equal Protection could be based on such factors.[23]  Not surprisingly, there again is no legal authority cited to support the novel proposition that an inference of discrimination can be drawn purely from allegedly inadequate documentation.  This is the classic "straw man" ruse:  concoct an impossible standard, and then argue that it has not been met.  No case holds that all purported witnesses must be interviewed.[24]  No case holds that a police officer, in documenting the facts of an altercation leading to criminal charges, must also document the behavior of an arrestee that did not lead to any charges. Quite to the contrary, the cases such as *Gomez v. Allegheny Health Services, Inc.,* 71 F.3d 1079, 1083 (3d Cir.1995), cited in the defendant's opening memorandum, make it clear that the plaintiff must show evidence of actual differential treatment, in order to reach the jury on a discrimination claim.  Lacking such facts in the record, the plaintiff turns in desperation to lame attacks on the officer and his credibility, which carry no legal weight.[25]  Reliance on the officer's "language, behavior and body language"[26] is similarly misplaced.  The Court will search in vain for any citation of authority to support consideration of these factors as sufficient to establish discrimination.[27]

---

[23] PAM at 9-12.

[24] In this case it is curious that two of the bystanders who were interviewed, Ms. Reid and Mr. Davis, were African-American, although they had little of value to say; a fact inconsistent with the claim of racial discrimination in the investigation.

[25] Plaintiff asserts, without citation of authority, that "[a] reasonable jury could conclude that Corporal Spence's lack of candidness [sic] his flip-flopping testimony and his untruthful statement on the witness stand about what happened at the scene shows the requisite discriminatory purpose…."  This is not the law, and counsel's reliance on this argument cannot rescue Pitts' claim.

[26] PAM at 12.

[27] Contrary to plaintiff's selective reconstruction of events, it was Pitts who "played the race card", by saying to Cpl. Spence, "If I was a white guy, you would have been out of that car, and been treating me differently."  I, 53, lines 17-18.  Pitts admitted at trial that he was accusing the officer of being racially motivated.  I, 55, lines 5-9.  The officer, to his credit, and inconsistent with the allegation of racism, bristled at the notion of being

The plaintiff attempts to equate Pitts' threat to get a gun and shoot Mitchem and Wykpisz, with Mitchem's testimony about "whoop-ass".[28]  Curiously, Pitts was not asked, on direct examination, about Mitchem's statement, and never testified that Mitchem threatened "to commit any crime likely to result in death or in serious physical injury".  11 *Del.C.* §621.  Thus, the testimony of Mitchem is undisputed.  He admitted going after Pitts, following the "sucker punch", but denied threatening him.  "No, I don't think I actually threatened him."[29]  Mitchem recalled the "open up a can of whoop ass" statement during the fight, which he characterized as a "promise" meaning that "I want to go at him."[30]  It is in the context of this undisputed testimony that the purported threat must be evaluated.  Not only did Pitts say nothing about it (or anything else with regard to the fight) at the scene, for purposes of the officer's investigation, but he made no mention of it at trial.  There was no factual basis for such a charge against Mitchem, whereas there was a clear basis for the charge against Pitts, based on the statements of Mitchem and Wykpisz, which, in the absence of any information from or explanation by Pitts, could reasonably be characterized as threats.[31]

---

labeled a racist.  When he asked Pitts "Are you calling me a racist?", Pitts replied "You're damn right that's what I'm calling you".  I, 56, lines 4-18.

[28] PAM at 6.

[29] II. 33, lines 12-13.

[30] II, 33, line 25; 34, lines 1-4.

[31] The plaintiff makes the bizarre argument, again unsupported by legal authority, that Cpl. Spence had a duty to inform Pitts "that he could not charge any of the other participants with certain offenses[,] should he not provide a statement or tell him what happened. [sic]."  PAM at 7-8, note 3.  In the context of Pitts' admitted racial diatribe directed at the officer, and his refusal to discuss the altercation, this is a ludicrous argument.  A law enforcement officer has no duty to advise an uncooperative putative victim that a failure to cooperate could affect his investigation.  This is obviously a matter addressed to the discretion of the officer, under the circumstances, and cannot give rise to a Constitutional claim.

Nor can the plaintiff base a Constitutional claim on the decision of Cpl. Spence to charge him with Criminal Trespass.[32]  Ignorance of the law is no excuse.  Criminal Trespass Third Degree is a violation that occurs when a person "knowingly enters or remains unlawfully upon real property".  11 *Del.C.* §821.  Delaware law further provides that "[a] person who, regardless of intent, enters or remains upon premises which appear at the time to be open to the public does so with license and privilege *unless the person defies a lawful order not to enter or remain, personally communicated by the owner of the premises or another authorized person.*"  (emphasis added)  11 *Del.C.* §829(d).  Pitts admitted that Mitchem asked him to leave.[33]  Whether he was technically on the leased premises of the body shop or merely within the common area of the industrial park[34] is of no moment.  Pitts had no legal right to remain; and Mitchem had every legal right to exclude him.  When Pitts (admittedly) defied a legal order to leave, he was subject to arrest for Criminal Trespass as a matter of law.

Pitts also fails to cite any authority for the preposterous notion that an Equal Protection claim can be based on the quality of documentation contained in a police report.[35]  Under Delaware law, the "physical injury" required for a charge of Assault Third Degree is defined as "impairment of physical condition or substantial pain".  11 *Del.C.* §222(23).  There is no requirement by statute or case law that the nature of the injury be documented in any particular manner, before a charge can be brought.  Pitts readily admitted at trial that he threw a punch and hit Mitchem in the face or mouth,

---

[32] PAM at 7.
[33] I, 13, lines 22-23; 14, lines 2-5, 11-12.
[34] II, 41, line 24.
[35] PAM at 8.

boxed with him for about five minutes, and knocked him over.[36]  "That's when I literally got a good, solid punch on him and he went down".[37]  It was a real physical fight, and Pitts testified that his blows connected.[38]  Pitts did not contradict Mitchem's testimony concerning the "sucker punch" in the back of the head.[39]  Not did Pitts' testimony dispute the fact that Mitchem twisted his ankle and fell.[40]  Thus, Cpl. Spence had ample grounds for finding that Pitts had caused substantial pain and impairment of Mitchem's physical condition.  As the officer had a clear factual predicate for the misdemeanor assault charge, based on facts admitted by Pitts at trial, there can be no credible claim of differential treatment based on the that charge.

The particular form of the arrest warrants[41] is insignificant, where the unrebutted testimony is that they were submitted to a neutral and detached magistrate judge in timely fashion.  The judge issued the warrants for both Pitts and Mitchem.  The behavior underlying the charges against Pitts was, for the most part, admitted in his testimony at trial.  The Court, for purposes of the pending motions, must accept these admissions as true.  For purposes of his investigation and placing charges, Cpl. Spence was fully entitled to consider the information he gained from Mitchem and Wykpisz.  The question is not what testimony the jury heard about the fight, but rather what information the officer was able to gain, and whether it was reasonable for him to act on it, in determining probable cause to arrest Pitts and Mitchem.  It was, as a matter of law.  The jury verdict to the contrary cannot be sustained.

---

[36] I, 15, lines 8-23; 38, lines 21-25; 40, lines 4-6..
[37] I, 47, lines 9-10.
[38] I, 39, lines 1-25; 40, line 1-3.
[39] II, 33, lines 3-4; 50, lines 8-14.
[40] II, 50, lines 22-24; 51, line 4.
[41] PAM at 13-14.

Pitts' remaining basis for the claim of differential treatment rests on his clearly mistaken belief, unsupported by the evidence, that he was the first caller to the 911 Center, and thus entitled to preferential treatment by the police officer.  Pitts admitted on cross-examination that he did not know who called first.[42]  Pitts further admitted that Mitchem could have called, after Wykpisz chased Pitts away, and before Pitts returned to his vehicle and placed a call.[43]  Pitts also conceded that Wykpisz could have called 911 before he intervened in the fight, since Pitts's focus was on Mitchem, and he did not know what Wykpisz was doing.[44]  Finally, Pitts agreed that the officer, arriving on the scene, would not know much more than "two guys were in a fight".[45]  This series of admissions completely undercuts Pitts' argument that the officer discriminated against him by failing to treat him as the victim of a crime.  Pitts' testimony also knocks out the weak claim that the manner of Cpl. Spence's investigation at the scene, or the sequence of interviews, could be evidence of differential treatment.  In fact, Pitts himself acknowledges that the officer's first contact was with Pitts, not with Mitchem or Wykpisz.[46]

Another false basis for the claim of differential treatment is the allegation that the officer, upon his arrival, took several minutes to speak on his radio before exiting his vehicle.  Pitts initially claimed in his testimony that Cpl. Spence "described everything" and "was running my description in".[47]  This assumption was the basis for Pitts' admitted accusation voiced to Cpl. Spence:  "If I was a white guy, you would have been out of that

---

[42] I, 41, lines 18-20.
[43] I, 42, lines 14-25; 43, lines 1-2.
[44] I, 43. lines 11-18.
[45] I, 44, lines 19-25; 45, lines 1-8.
[46] I, 55, lines 10-25, 56, lines 1-3.
[47] I, 24, lines 5-10; 53, lines 1-4.

car, and been treating me differently."[48]  But Pitts, on cross-examination, conceded under

oath that *he could not hear what Cpl. Spence was saying*.[49]  Pitts is bound by this

admission, and his further statement that his problem with the officer's "attitude" was

entirely based on the *assumption* that he was running Pitts' description and his license tag

number.[50]  This faulty assumption, based on no credible facts, cannot form the basis for a

claim that Pitts' Constitutional rights were violated.  Pitts even admitted that Cpl. Spence,

as he testified at trial, attempted to explain what he was doing, that he had to call in a

second time, because of information that a gun was involved.  Pitts testified that he told

the officer "I gave you time to call in".[51]  The plaintiff's version of events does not

support a claim of discrimination.

### There was no evidence to support a finding of probable cause to arrest Daniel Wykpisz, and thus no basis for an Equal Protection claim.

The plaintiff now argues that Daniel Wykpisz, the body shop employee, was "one

of the two white participants in the fight".[52]  No evidence in the record supports that

claim.  There is no testimony in this record to suggest that Wykpisz even touched Pitts,

let alone caused him any harm.  The only evidence from any source is that Wykpisz

broke up the fight and chased Pitts away, which he had a clear right to do under Delaware

law.  In the absence of any complaint by Pitts, there was no basis for Cpl. Spence to

charge Wykpisz with any crime.  Therefore, there can be no selective enforcement claim

based on the conduct of Wykpisz.

---

[48] I, 24, lines 18-20; 53, lines 17-18.
[49] I, 53, lines 1, 4-5, 10-12,
[50] I, 54, lines 1-19.
[51] I, 57, lines 3-23.
[52] PAM at 4.

Pitts conceded on cross-examination that Mr. Wykpisz only intervened to stop the fight when Pitts knocked Mitchem to the ground.[53]  Wykpisz chased Pitts away, but never struck him.[54]  Pitts armed himself with a board and a pole, "maybe two feet by three feet", and Wykpisz stopped and turned around.[55]  Pitts is bound by these admissions. Moreover, he testified that he at no time gave a statement to the investigating officer concerning Wykpisz' conduct.[56]  Thus, it is uncontested that Cpl. Spence had no factual basis to arrest Wykpisz.  His arrest would have been illegal; a violation of Wykpisz' Fourth Amendment rights.  Surely the plaintiff lawyers cannot condone the arrest of an individual in the absence of probable cause.  Pitts' admitted failure to provide any information to the officer is fatal to his claim that Wykpisz should have been arrested.

Contrary to plaintiff's argument, Wykpisz' testimony that he broke up the fight, with Mitchem on the ground (as admitted by Pitts), by brandishing a baseball bat, does not establish a violation of any criminal statute.  As Cpl. Spence himself pointed out, in the absence of any information from Pitts, there was no factual evidence of a threat, or of Pitts being in fear of harm.  The evidence that Pitts returned to the scene and entered his vehicle is inconsistent with threatening behavior on the part of Wykpisz.  Mr. Wykpisz would clearly have been justified, based on the facts made known to the officer at the scene, in using force for the protection of Mr. Mitchem.  11 *DelC*. §465.  In fact, he used

---

[53] I, 40. lines 4-10.
[54] I, 40. lines 10-12.
[55] I, 17, lines 1-8; 15-22; 40, lines 13-22.
[56] Pitts' reliance, PAM at 5, on his trial testimony is misplaced.  Pitts at no time told the officer that he was "scared and threatened", and Cpl. Spence did not hear this from any other source.  Pitts' admitted failure to provide any information to the officer is fatal to his claim that Wykpisz threatened him.

no such force, but managed to accomplish his objective, that of saving Mitchem from further harm, without further incident.

Pauline Reid did not make any allegations of criminal conduct on the part of Mr. Wykpisz in her statement to Sgt. Hulings. She confirmed that someone broke up the fight and chased Pitts away. There is nothing in the statement of Ms. Reid that could establish probable cause to arrest Wykpisz.[57]

**The plaintiff failed to present evidence in support of damages for emotional distress.**

The only evidence presented in support of damages was the testimony of Pitts that he paid $85 for towing and storage of his vehicle,[58] and "seven or $800" for legal representation.[59] The plaintiff admitted that he did not sustain any physical injuries,[60] and he received no medical treatment.[61] Pitts did complain of "embarrassment, humiliation", and claimed that "eventually later on" he saw a psychiatrist or psychologist "for this and other things",[62] but no medical records or reports were submitted, and no medical expert was called by the plaintiff to testify.[63] At no point did Pitts elaborate on his supposed counseling or treatment. He admitted that he was disabled as a result of a series of car accidents.[64] There was no expert testimony to support a finding that any physical or psychological complaints of Pitts could be attributed with reasonable medical

---

[57] II, 21, lines 3-23.
[58] I, 32, lines 15-17.
[59] I, 34, lines 22-25.
[60] I, 36, lines 5-9.
[61] I, 36, lines 10-17.
[62] I, 36, lines 18-21.
[63] The plaintiff contends that Pitts' single comment is entitled to "great weight", but again fails to cite any authority for this proposition. PAM at 25.
[64] I, 36, lines 22-25; 37, lines 1-2.

certainty to his arrest by Cpl. Spence.[65]  Neither Pitts nor any witness on his behalf testified as to any effect of his arrest beyond the immediate aftermath of his booking and release on bail.[66]

The plaintiff cites *Motter v. Everest & Jennings, Inc.,* 883 F.2d 1223, 1232 (3d Cir.1989) regarding what constitutes a "reasonable basis" to uphold a jury award.  In that case, an aide in a nursing home sustained injuries to her left arm, hand, neck, shoulder, and the base of her skull, when a patient chair malfunctioned.  In her products liability lawsuit against the chair manufacturer, she presented expert testimony from her treating orthopaedic surgeon and neurosurgeon, who confirmed her extreme pain and her total and permanent disability.  A substantial verdict for pain and suffering was upheld.  In the present case, Pitts denied injury, and presented no expert testimony, thus affording the jury (and the Court) no such "reasonable basis" for a windfall award.

As the Court stated in *Gumbs v. Pueblo Int'l., Inc.,* 823 F.2d 768, 773 (3d Cir. 1987), a case cited by the plaintiff as controlling authority on this point, "[a] jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as if it were a winning lottery ticket.

---

[65] The plaintiff argues, in apparent desperation, that "there were 20-30 [sic] additional witnesses who could have testified as to Mr. Pitts' harm, had Corporal Spence chose [sic] to interview them at the scene or recorded their names so that their testimony could be later presented."  PAM at 25.  This is pure sophistry.  A police officer has no obligation to secure witnesses for a later civil rights action against him.  The idea is absurd.  A crowd indeed gathered after the altercation between Pitts and Mitchem, but there is no reason to believe that any of them would have contributed anything of value to Pitts' damage claim.

[66] The jury finding of probable cause to arrest Pitts in rejecting the false arrest and malicious prosecution claims means that Pitts cannot recover for alleged "distress" incident to normal arrest, booking, and arraignment procedures.  Thus, he cannot claim damages for his supposed (contradicted by Ms. Reid's testimony that she offered him a ride) forced march or late arrival home after his release on bail.

There must be a rational relationship between the specific injury sustained and the amount awarded." The award for pain and suffering in *Gumbs,* which had already been reduced by $325,000 through remittitur by the trial court, was further reduced by $240,000 by the Third Circuit Court. This was despite extensive medical expert testimony at trial. By comparison, Pitts' claim is equivalent to the lottery ticket.

In *Glass v. Snellbaker,* 2008 WL 4371760 (D.N.J.Sept. 17, 2008), another case relied on by the plaintiff, an award of $250,000 for emotional damages in a First Amendment retaliation case was reduced to $50,000. The Court found no rational relationship between the injury sustained and the amount awarded. As here, the verdict was "clearly unsupported", and exceeded the amount needed to make the plaintiff whole. *Id.* at 20. In this case, unlike *Bates v. Bd. of Educ.*, 2000 WL 1292677 (D.Del. March 31, 2000), there is no evidence of record to support the existence of any injuries. As noted in *Keller v. City of Stockton,* 2005 WL 2051043 (E.D.Ca. July 20, 2006),[67] where an award of damages is "grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork, and gives rise to an inference that passion and prejudice tainted the jury's finding of liability, a new trial may be in order." *Id.* at 8. Such is the case here, unlike the record in *Keller, supra,* that was "replete with testimony" concerning mental anguish, emotional trauma, and the disruption of father-daughter relations attributed to an improper intervention by child welfare workers.

In *Martinez v. Port Authority,* 2005 WL 2143333 (S.D.N.Y.2005)[68], the award for "emotional distress, mental anguish, and loss of liberty damages" was reduced to 36% of the jury verdict, despite testimony from the plaintiff's therapist concerning her treatment

---

[67] PAM at 26.
[68] PAM at 26.

and diagnosis of post-traumatic stress syndrome, and extensive testimony from the plaintiff and his domestic partner as to his ongoing distress. *Id.* at 18. No such lay or expert testimony was presented in support of Pitts' claim. The plaintiff's reliance on the holding in *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir.1995) is also misplaced. The plaintiffs in that case were improperly denied emergency water service to their home for a period of over one hundred days. The court held only that the plaintiffs were entitled to damages for their distress and discomfort in being without water for a protracted period, and upheld awards of $40,800 for each of the adult plaintiffs, and $20,400 for their son. It is hard to fathom what comfort Pitts could find in such a case. The same would apply to *Sheets v. Salt Lake County,* 45 F.3d 1383, 1390 (10th Cir.1995), a privacy claim brought by the husband of a murder victim against authorities who improperly released the contents of his late wife's diary, which has no application here.

Finally, the plaintiff apparently finds a parallel to his arrest, and his complaint that the handcuffs were tight, in *Blissett v. Coughlin,* 66 F.3d 531 (2d Cir.1995), in which a compensatory damage award of $75,000 was upheld. The evidence in that excessive force case included the plaintiff's testimony that he was strip-searched, beaten repeatedly, struck in the groin with a baton, threatened with death, and choked until he became unconscious. Bleeding from the mouth, he was then placed in a tiny cell where the walls, sink, mattress, and floor were smeared with feces. He was issued clothing and bedding that smelled of feces. He remained in the isolation cell for eight days, without medical treatment. Needless to say, the complete lack of any such evidence undermines the jury award here, and the stark contrast in facts proves the need for a new trial on damages.

## Conclusion

The defendant, Gregory Spence, seeks, in the alternative, the following relief:

- remittitur or a new trial on the issue of punitive damages;

- remittitur or a new trial on the issue of compensatory damages;

- judgment as a matter of law, based on qualified immunity;

- judgment as a matter of law, or a new trial, based on inconsistent verdict;

- judgment as a matter of law based on the lack of evidence to support the
  plaintiff's claims.

The procedural basis for the Court to grant such relief is set forth in Rule 50(a), Rule

50(b), Rule 50(c), and in Rule 59.

WHEREFORE, the defendant, Corporal Gregory Spence, asks that the Court

enter judgment in his favor on the claims of a denial of equal protection and illegal search

and seizure, and a conditional grant of a new trial in the event that order is reversed on

appeal.  In the alternative, the defendant asks that the Court grant a new trial on the

claims of denial of equal protection and illegal search and seizure.  Finally, the defendant

asks that the Court grant a new trial on the issue of both compensatory and punitive

damages, or, in the alternative, that the Court grant a remittitur as to each.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**


    /s/Ralph K. Durstein, III
RALPH K.DURSTEIN, III, #912
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

DATED:  April 23, 2009                          Attorney for Gregory Spence