IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COURTLAND C. PITTS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 05-185-JJF |
| | : | |
| GREGORY SPENCE, | : | |
| | : | |
| Defendant. | : | |

---

John W. Shaw, Esquire; Karen E. Keller, Esquire; James L.
Higgins, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, Delaware.

Attorneys for Plaintiff.

Ralph K. Durstein, III, Esquire of DEPARTMENT OF JUSTICE, STATE
OF DELAWARE, Wilmington, Delaware.

Attorney for Defendant.

---

**MEMORANDUM OPINION**

July _8_ , 2010
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Defendant Corporal Gregory Spence's Motion For Judgment As A Matter Of Law Or New Trial (D.I. 111), Plaintiff Courtland C. Pitts's Motion For Attorneys' Fees And Expenses (D.I. 112), and third party Real World Law PC's Motion Nunc Pro Tunc for Attorneys' Fees And Expenses (D.I. 128). For the reasons discussed, Defendant's Motion For Judgment As A Matter Of Law will be granted, Plaintiff's Motion For Attorneys' Fees And Expenses will be denied, and Real World Law PC's Motion Nunc Pro Tunc for Attorneys' Fees And Expenses will be denied.

**PROCEDURAL BACKGROUND**

Plaintiff, Courtland C. Pitts ("Mr. Pitts"), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights against Defendant, Corporal Gregory Spence ("Corporal Spence"), and other defendants on March 25, 2005. On July 25, 2005, the Court issued a Memorandum Opinion dismissing Mr. Pitts' claims against the State of Delaware, the Delaware State Police and numerous other defendants as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). (D.I. 6.) Mr. Pitts proceeded to trial against Corporal Spence on claims of false arrest, malicious prosecution, illegal search and seizure, and equal protection violations. A jury trial was held, and the jury returned a verdict in favor of Corporal Spence on the false arrest and malicious prosecution claims and against Corporal Spence on the illegal search and seizure and equal protection

claims. (D.I. 107.) Judgment was entered in favor of Mr. Pitts and against Corporal Spence in accordance with the jury verdict. (D.I. 110.)

Shortly thereafter, Corporal Spence filed the pending Motion For Judgment As A Matter Of Law Or New Trial, and Mr. Pitts filed the pending Motion For Attorneys' Fees And Expenses. Third party Real World Law, PC ("Real World Law") also filed the pending Motion Nunc Pro Tunc For Attorneys' Fees And Expenses.

## FACTUAL BACKGROUND

This litigation stems from an altercation between Mr. Pitts and James Mitchem ("Mr. Mitchem"), the owner of Mitchem's Auto Body Shop. The altercation took place on the premises of the auto body shop on April 3, 2003. Mr. Pitts had gone to the shop to express his dissatisfaction with work that was done to his car.[1] A verbal dispute between Mr. Pitts and Mr. Mitchem soon escalated to a physical altercation.[2] The record contains conflicting testimony as to who touched whom first,[3] however, it is clear that Mr. Pitts and Mr. Mitchem sparred for several minutes before Mr. Pitts punched Mr. Mitchem in either the face

---

[1](D.I. 116, Trial Tr. Day 1, Vol I, at 11:9-11.)

[2](Id. at 14:20-15:9.)

[3](Compare id. at 15:5 with D.I. 118, Trial Tr. Day 1, Vol. II, at 30:2-10.)

2

or mouth, and Mr. Mitchem fell to the ground.[4]   Daniel Wykpisz
("Mr. Wykpisz"), a body shop employee, testified that he called
911 at this time.[5]  Mr. Pitts was not injured.[6]

According to Mr. Pitts, Mr. Wykpisz was watching the fight
from about ten to fifteen yards away and did not try to intervene
initially.[7]  However, when Mr. Mitchem was knocked to the ground,
Mr. Wykpisz grabbed a baseball bat, yelled at Mr. Pitts, and
chased him into the adjoining industrial park.[8]  Mr. Mitchem
testified that at this point, he called the police.[9]  While
fleeing from Mr. Wykpisz, Mr. Pitts picked up a board to defend
himself, but did not swing it.[10]  Once Mr. Wykpisz retreated, Mr.
Pitts returned to his car to call 911.[11]  Mr. Pitts testified
that Mr. Mitchem threatened him with a gun, but Mr. Pitts
admitted he never informed Corporal Spence of that threat.[12]

---

[4] (D.I. 116, at 15:15-21.)

[5] (D.I. 118, at 67:18-25.)

[6] (D.I. 116, at 36:5-13.)

[7] (Id. at 15:24-16:6.)

[8] (Id. at 16:14-22; 40:4-9.)

[9] (D.I. 118, at 35:11-13.)

[10] (D.I. 116, at 17:1-14.)

[11] (Id. at 18:12-17.)

[12] (Id. at 45:12-17.)

Corporal Spence was the first officer to arrive at the scene. Mr. Pitts testified that he approached Corporal Spence's patrol vehicle, waving to identify himself as the person that called 911.[13] Mr. Pitts and Corporal Spence agree that Corporal Spence did not immediately exit his patrol vehicle, but rather continued the communications he was involved in on his radio.[14] Mr. Pitts testified that when Corporal Spence continued to use his radio, he said to Corporal Spence, "If I was a white guy, you would have been out of that car, and I would have been treated differently."[15] At this point, Corporal Spence exited his vehicle, and he and Mr. Pitts engaged in a verbal exchange. According to Mr. Pitts' testimony, Corporal Spence became "loud, nasty, and aggressive," and "got in my face . . . almost chest-to-chest."[16] Corporal Spence testified that he was concerned for his safety because of Mr. Pitt's behavior and that he explained to Mr. Pitts that he would be with him shortly.[17]

Corporal Spence testified he instructed Mr. Pitts to quiet down or he would be arrested.[18] Corporal Spence testified that

---

[13] (Id. at 22:24- 23:10.)

[14] (See id. at 23:19-24:10; D.I. 118, at 87:24-88:12.)

[15] (D.I. 116, at 24:17-20.)

[16] (Id. at 24:24-25:22.)

[17] (D.I. 118, at 92:3-25.)

[18] (Id. at 99:1-25.)

4

Mr. Pitts refused to comply,[19] so Corporal Spence handcuffed Mr. Pitts and put him in the patrol vehicle. According to Mr. Pitts, while being placed in the patrol vehicle, he told Corporal Spence that he was hurt and that his circulation was being cut off by the handcuffs.[20] Corporal Spence further testified that he asked Mr. Pitts if he wanted to talk, but Mr. Pitts refused.[21] Additionally, Mr. Pitts testified that he declined to give a statement when questioned by another police officer after interviewing at the police station.[22]

After Mr. Pitts was placed in the patrol vehicle, Corporal Spence interviewed Mr. Mitchem and Mr. Wykpisz.[23] Mr. Mitchem was also arrested, however he was handcuffed by an another trooper who had been dispatched to assist Corporal Spence.[24]

After Mr. Pitts was taken to the state police troop, an inventory search was conducted of his car and it was towed to storage.[25] Mr. Pitts testified that he was told that his car was

---

[19] (Id. at 99:21-23.)

[20] (Id. at 26:9-27:1.)

[21] (Id. at 26:12-13; D.I. 118, at 93:15-17.)

[22] (D.I. 116, at 27:12-19.)

[23] (D.I. 118, at 71:3-10.)

[24] (Id. at 45:9-12.)

[25] (D.I. 116, at 29:18-19.)

towed "for its protection."[26] Although Mr. Mitchem was also arrested, his car, which was parked on his body shop property, was not towed.[27]

Mr. Pitts was charged with aggravated menacing, two counts of terroristic threatening, assault in the third degree, disorderly conduct, and criminal trespass.[28] Mr. Mitchem was charged with disorderly conduct, offensive touching, and criminal mischief.[29]

## CORPORAL SPENCE'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

### I. Standard of Review

A. Motion For Judgment As A Matter Of Law Under Rule 50(a)

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for a party on a given issue after that party has been fully heard. Fed. R. Civ. P. 50(a). In determining whether sufficient evidence was presented to support a jury verdict, a court must give the non-moving party, "as verdict winner, the benefit of all logical inferences that could

---

[26] (Id. at 30:8-9.)

[27] (D.I. 118, at 45:24-25.)

[28] (D.I. 116, at 33:20-34:5; PX 3.)

[29] (PX 2.)

6

be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991). A court must not weigh the evidence, evaluate the credibility of the witnesses, or substitute its own version of the facts for the jury's findings. Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Although a court should grant judgment as a matter of law sparingly, it is appropriate where only a "scintilla of evidence" supports the verdict, or where "the record is critically deficient of the minimum quantum of evidence" needed to support the verdict. Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003)(citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).

B.    Motion For A New Trial Under Rule 59(a)

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, after a jury trial, a court may grant a new trial to any party on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Among the most common reasons for granting a new trial are the following: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial;

(3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc., 585 F. Supp. 2d 568, 580-81 (D. Del. 2008). While the decision to grant a new trial lies solely within the discretion of the district court, Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980), a court should not disturb the verdict unless the verdict "on the record, cries out to be overturned or shocks the conscience." Williamson, 926 F.2d at 1353 (citing EEOC v. Del. Dep't of Health & Social Serv., 865 F.2d 1408, 1413 (3d Cir. 1989)).

## II. Discussion

By his Motion, Corporal Spence requests judgment as a matter of law, or alternatively, a new trial on both claims in which the jury found in Mr. Pitts' favor, specifically, the illegal search and seizure claim and the equal protection claim. The Court will address Corporal Spence's arguments pertaining to each of these claims in turn.

### A. The Jury's Verdict In Favor Of Mr. Pitts On The Illegal Search and Seizure Claim

With respect to the jury's verdict in favor of Mr. Pitts on the illegal search and seizure claim, Corporal Spence contends that (1) the jury's verdict is facially inconsistent insofar as the jury found in favor of Corporal Spence on Mr. Pitts' false arrest claim and in favor of Mr. Pitts on the illegal search and

8

seizure claim, and (2) insufficient evidence supports the jury's verdict on the illegal search and seizure claim such that judgment as a matter of law is warranted in favor of Corporal Spence, rather than the grant of a new trial. Corporal Spence contends that in rejecting Mr. Pitts' false arrest claim, the jury necessarily found that Corporal Spence had probable cause to arrest Mr. Pitts, or stated another way, that Mr. Pitts' arrest was reasonable. Corporal Spence contends that this reasonableness finding cannot be reconciled with the jury's finding that Mr. Pitts' rights were violated by his seizure, because if Mr. Pitts' arrest was reasonable, his seizure must also have been reasonable. However, Corporal Spence contends that this inconsistent verdict does not require a new trial, because the evidence was insufficient to support the jury's verdict that the search and seizure of Mr. Pitts was illegal.

In response, Mr. Pitts contends that the jury's verdict is not inconsistent. Mr. Pitts contends that the jury was not asked specifically about probable cause, and therefore, the Court cannot assume that the jury found for Corporal Spence on the issue of probable cause. Mr. Pitts also contends that Corporal Spence waived any argument regarding an inconsistent verdict on this basis, because he did not raise any objection to the jury instructions.

As the parties' point out, the jury was presented with two

possible scenarios to support a claim of illegal search and seizure: (1) when Mr. Pitts was handcuffed and placed in the patrol vehicle; and (2) when Mr. Pitts' car was impounded and an inventory search performed. (See D.I. 120, at 15; D.I. 121, at 4-5.) However, a special verdict form was not utilized in this case which would allow the Court to determine which factual scenario the jury found supports an illegal search and seizure verdict. Therefore, the Court will consider each basis for the illegal search and seizure claim separately.

1. *Whether The Jury's Verdict Of Illegal Seizure Is Inconsistent And/Or Supported By The Evidence To The Extent That Verdict Is Based On The Handcuffing Of Mr. Pitts And His Placement In The Patrol Car*

In so far as the jury concluded that the handcuffing and placement of Mr. Pitts in the patrol vehicle amounted to an illegal seizure, the Court concludes that the jury's verdict is facially inconsistent with its verdict in favor of Defendant on the false arrest claim. The Court instructed the jury that in order for the handcuffing of Mr. Pitts to constitute an illegal seizure under the Fourth Amendment, Mr. Pitts was required to prove three elements by a preponderance of the evidence: (1) "Corporal Spence intentionally handcuffed Mr. Pitts, and placed him in the back seat of a patrol vehicle . . . ., ; (2) "those acts subjected Mr. Pitts to a seizure"; and (3) "the seizure was

unreasonable."[30] The jury was then instructed with regard to the false arrest claim that an arrest of a citizen is a seizure, and "[t]o determine whether the arrest was unreasonable in this case, you must decide whether Corporal Spence has shown that the arrest was justified by probable cause."[31] Thus, both the false arrest claim and the illegal seizure claim implicate the same underlying conduct: Corporal Spence's intentional handcuffing and placement of Mr. Pitts in the patrol vehicle. If, as Mr. Pitts contends, his detention in the patrol car is separate and distinct from his formal arrest, then the verdict in this case may be reconcilable. However, the Court need not make this determination, because regardless of whether the verdict is inconsistent or reconcilable, the Court concludes that Corporal Spence is entitled to judgment as a matter of law because there is insufficient evidence to support the jury verdict that Mr. Pitts was subject to an illegal seizure based upon his handcuffing and placement in the patrol vehicle.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Whether a search and seizure is unreasonable "varies with the circumstances, and requires a balancing of the 'nature and extent of the governmental interests' that justify the seizure against the

---

[30](D.I. 117, Trial Tr. Day 2, at 83:17-25.)

[31](Id. at 84:5-10.)

11

'nature and quality of the intrusion on individual rights' that the seizure imposes." Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 22, 24 (1968)).  An investigative detention is reasonable under the Fourth Amendment if the detaining officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.  This reasonableness test must consider the totality of the circumstances, Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000), and the detaining officer must be able to point to "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." U.S. v. Cortez, 449 U.S. 411, 417 (1981)(citations omitted).  "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27.  Thus, "[t]he ultimate question is whether a reasonable, trained officer standing in [Corporal Spence]'s shoes could articulate specific reasons justifying [Mr. Pitt]'s detention." Johnson, 332 F.3d at 206-07.

The parties do not contest that once Mr. Pitts was handcuffed and placed in the patrol vehicle, he was "seized" for Fourth Amendment purposes.  Reviewing the evidence in the light

most favorable to Mr. Pitts, the Court concludes that there is insufficient evidence upon which the jury could have concluded that the seizure of Mr. Pitts' person was unreasonable such that it constituted a Fourth Amendment violation.[32]  Corporal Spence's undisputed testimony is that he was dispatched to a fight at Mitchem's Auto Body Shop, that he was advised by the dispatcher that somebody at the scene might be retrieving a gun from a vehicle, and that a crowd of approximately 20 people had gathered near the scene.[33]  Mr. Pitts was standing near his car when Corporal Spence arrived, and he walked toward Corporal Spence, waiving his arms.[34]  Corporal Spence told Mr. Pitts to back up,

_____

[32]     Even if the Court views Mr. Pitts' detention as an arrest, the Court concludes that Defendant is still entitled to judgment as a matter of law.  An arrest is reasonable if it is supported by probable cause.  See e.g., Virginia v. Moore, 553 U.S. 164 (2008) (recognizing the long line of cases holding that an arrest is reasonable for Fourth Amendment purposes when the officer has probable cause to believe that the arrestee committed even a minor crime in the officer's presence).  In this case, the jury found that Mr. Pitts was not falsely arrested, and Mr. Pitts takes no issue with the jury's verdict on that claim.  The jury's verdict on the false arrest claim necessarily implicates a finding that probable cause was not lacking, and in any event, the Court concludes that, under the facts presented, no reasonable jury could conclude that Corporal Spence lacked probable cause to arrest Mr. Pitts.  Accordingly, judgment as a matter of law is appropriate in favor of Corporal Spence, regardless of whether the handcuffing and placement of Mr. Pitts in the patrol car is viewed as a formal arrest or a Terry detention.

[33](D.I. 118, at 84:17-18; 86:14-16, 21.)

[34](D.I. 116, 22:18-19; 23:11-13; 51:16-18.)

13

and began talking on his radio.[35] Mr. Pitts could not hear what Corporal Spence was saying on the radio, but became upset when Corporal Spence got on his radio a second time. Mr. Pitts stated, "If I was a white guy, you would have been out of that car, and I would have been treated differently."[36] Corporal Spence then exited his vehicle, and according to Mr. Pitts's testimony, became "loud, nasty, and aggressive," and "got in my face . . . almost chest-to-chest."[37] Mr. Pitts testified that he "got hot-headed and [] started arguing back with [Corporal Spence]," and that the two were "hollering back and forth" for several minutes.[38] Corporal Spence then instructed Mr. Pitts to be quiet or face arrest.[39] Mr. Pitts testified that he told Corporal Spence that he would not "shut[] up" or "hold back" when he believed he was right.[40] Mr. Pitts also testified that he told Corporal Spence, "That badge you wear. Respect you earn. With me, you want to shut me up, you shut me up."[41] Mr. Pitts then allowed himself to be handcuffed by Corporal Spence, and

---

[35] (Id. at 23:14-25.)
[36] (Id. at 23:17-20; 52:22.)
[37] (Id. at 24:24-25:22.)
[38] (Id. at 25:21-25.)
[39] (Id. at 26:2-3.)
[40] (Id. at 26:4-5.)
[41] (Id. at 26:2-3; 56:22-25.)

14

Corporal Spence placed him in the patrol vehicle.[42] At the time of this seizure, the back-up requested by Corporal Spence had not yet arrived, and Corporal Spence had not yet been able to interview anyone else at the scene.[43] Corporal Spence testified that he handcuffed Mr. Pitts because he feared getting into a fight with him with no back-up present.[44] Accordingly, the Court concludes that, based on the facts available to Corporal Spence at the time he handcuffed Mr. Pitts, the detention of Mr. Pitts was reasonable in that Corporal Spence had an articulable suspicion that Mr. Pitts had been involved in a fight at Mitchem's Auto Body Shop, and that Corporal Spence's personal safety or the safety of others at the scene could be in danger. In these circumstances, the Court concludes, as a matter of law, that the seizure of Mr. Pitts was reasonable, and therefore, the Court will grant judgment as a matter of law in favor of Corporal Spence on Mr. Pitts' claim of illegal seizure to the extent that claim is based on the handcuffing and placement of Mr. Pitts in the patrol car.

---

[42] (Id. at 26:7-8.)

[43] (D.I. 118 at 99:14-18; 100:10-13.)

[44] (Id. at 99:1-5.)

        2.   *Whether The Jury's Verdict Of Illegal Search and*
            *Seizure Is Supported By The Evidence To The Extent*
            *That The Verdict Is Based On The Towing And*
            *Inventory Search Of Mr. Pitts' Vehicle*

To the extent that the jury's verdict of illegal search and seizure was based upon the impounding of Mr. Pitts' vehicle, Corporal Spence contends that insufficient evidence was presented to establish that the seizure and inventory search of Mr. Pitts' vehicle was unreasonable. In response, Mr. Pitts contends that Corporal Spence admitted that he did not have probable cause to conduct a search of Mr. Pitts' vehicle, and therefore, the seizure and inventory search of the vehicle was necessarily unreasonable.

Viewing the evidence in the light most favorable to Mr. Pitts as the verdict winner, the Court concludes that no legally sufficient evidentiary basis was presented for the jury to conclude that the search and towing of Mr. Pitts' car amounted to an illegal search and seizure. The evidence established that at the time Mr. Pitts was arrested, Mr. Mitchem had already damaged Mr. Pitts' car, and Corporal Spence was concerned that further damage to the vehicle could result if it was left unsecured on the premises.[45] Corporal Spence was further concerned that when Mr. Pitts returned to retrieve his vehicle another fight could

---

[45] (Id. at 122:16-21.)

begin.[46]  Before towing Mr. Pitts' vehicle, Corporal Spence gave
Mr. Pitts the opportunity to call someone to pick it up, but Mr.
Pitts had no one to call.[47]  In these circumstances, the Court
concludes as a matter of law, that the towing of Mr. Pitts'
vehicle was reasonable.

Having concluded that the towing of the vehicle was required
both to prevent harm to the vehicle and to prevent the
possibility of another altercation, the Court likewise concludes
that the inventory search was reasonable as a matter of law.  Mr.
Pitts suggests that the fact that Corporal Spence did not have
probable cause to search the vehicle renders the search
unreasonable.  However, the concept of probable cause is not
implicated in an inventory search.  Colorado v. Bertine, 479 U.S.
367, 371 (1987).  Mr. Pitts also contends that the inventory
search could reasonably have been viewed by the jury as a
subterfuge for a criminal investigation against Mr. Pitts.  In
this regard, Mr. Pitts suggests that the search of the vehicle
was a pretext for attempting to discover additional evidence
against Mr. Pitts so that additional charges could be brought
against him.  However, the Court finds no evidence in the record
to support such a conclusion.  Corporal Spence testified that he
performed the inventory search according to his understanding of

---

[46] (Id. at 122:22-24.)

[47] (Id. at 123:2-5.)

17

standard department procedures and that when a vehicle is going to be seized, an inventory search is necessary to protect the police department from false claims for missing items.[48]  Nothing in the record contradicts Corporal Spence's testimony on these points, or supports a conclusion that the search was unreasonable as a matter of law.  In addition, the fact that Mr. Pitts could have been charged with additional crimes if contraband was discovered in the vehicle, does not, in the Court's view, render the search unreasonable under the Fourth Amendment.  The law is well-established that criminal charges may be brought when contraband is subsequently discovered during an inventory search of vehicles.  See South Dakota v. Opperman, 428 U.S. 364, 375-76 (1976)(reversing South Dakota Supreme Court, which overturned respondent's conviction for possession of marijuana, which was discovered pursuant to a constitutional inventory search of respondent's vehicle).  Accordingly, the Court concludes that, in light of the evidence presented, no reasonable jury could have concluded that the towing and inventory search of Mr. Pitts' car was an unreasonable and illegal search and seizure, and therefore, the Court will grant judgment as a matter of law in favor of Corporal Spence on Mr. Pitts' illegal search and seizure claim to the extent that claim is based upon the impounding of Mr. Pitts' vehicle.

---

[48](D.I. 117, at 10:25-11:22; D.I. 118, at 1222:16-123:24.)

B.   The Jury's Verdict In Favor Of Mr. Pitts On The Equal
     Protection Claim

Corporal Spence also requests judgment as a matter of law

with respect to Mr. Pitts' Fourteenth Amendment equal protection

claim.   The jury returned a verdict in favor of Mr. Pitts on this

claim (D.I. 107), but Corporal Spence contends that the record is

insufficient to support the jury's verdict.   Corporal Spence

contends that Mr. Pitts cannot demonstrate that he and Mr.

Mitchem were treated differently for purposes of a Fourteenth

Amendment equal protection claim because both Mr. Pitts and Mr.

Mitchem were arrested, charged, booked, released on bail and

prosecuted.   Thus, Corporal Spence maintains that this is not a

case of racial discrimination, and therefore, the jury's verdict

should not be permitted to stand.

In response, Mr. Pitts contends that the jury's verdict of

an equal protection violation was supported by the evidence,

because the jury could have reasonably found that the law was

selectively enforced against Mr. Pitts, as a result of his race.

Specifically, Mr. Pitts contends that Mr. Mitchem and Mr.

Wykpisz, both of whom are Caucasian, were treated differently

than Mr. Pitts, who is an African American, because (1) Corporal

Spence could have charged Mr. Wykpisz with aggravating menacing,

the same charge that was brought against Mr. Pitts for chasing

Mr. Wykpisz with a pole, but Corporal Spence chose not to do so;

(2) Corporal Spence failed to charge Mr. Mitchem with terroristic

19

threatening based on threatening statements, even though he charged Mr. Pitts with that crime; (3) Corporal Spence recommended charges against Mr. Pitts that should not have been brought, such as criminal trespass, third degree assault, and aggravated menacing; (4) Corporal Spence towed and conducted a search of Mr. Pitts' vehicle, but Mr. Mitchem's vehicle was not towed and searched; and (5) Corporal Spence did not properly document or investigate the incident so as to avoid having to charge Mr. Mitchem and Mr. Wykpisz with certain crimes, and to make it more difficult for Mr. Pitts to defend himself against the charges brought against him. Thus, Mr. Pitts contends that the jury could have found an equal protection violation on any one of these five bases.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Essentially, it is a directive to the States that they should treat all similarly situated persons alike. City of Cleburne v. Cleburne Living Ctr., 476 U.S. 432, 439 (1985). To prevail on a claim for denial of equal protection brought under 42 U.S.C. § 1983, a plaintiff must prove the existence of purposeful discrimination. Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009)(citing Andrews v. City of Phila., 895 F.2d

1469, 1478 (3d Cir. 1990)). "[He] must demonstrate that [he] received different treatment from that received by other individuals similarly situated." Id.; see also Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)(citation omitted)(stating that in order to prevail on an equal protection claim for selective enforcement, a plaintiff would have to show that others similarly situated were selectively treated, and that the selective treatment was based on an "unjustifiable standard, such as race, or religion, or some other arbitrary factor. . .").

The jury was instructed that "[t]he plaintiff must show by a preponderance of the evidence that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." (D.I. 117, at 82:21-23.) Further, the jury was told that Mr. Pitts had to prove that, "as a member of a protected class, he is similarly situated to members of [an unprotected class], and that he was treated differently than members of the unprotected class." (Id. at 82:23- 83:2.)

Reviewing the evidence in the light most favorable to Mr. Pitts, the Court concludes that there is insufficient evidence upon which the jury could have found an equal protection violation by Corporal Spence. In reaching this conclusion, the Court is unpersuaded by Mr. Pitts' contention that Corporal Spence should have charged Mr. Mitchem and Mr. Wykpisz with certain crimes and that Corporal Spence should not have charged

21

Mr. Pitts with certain crimes, and that these decisions were motivated by a discriminatory purpose. At the time of the incident, Mr. Pitts refused to speak with Corporal Spence, and therefore, Mr. Pitts never reported to Corporal Spence that he had been verbally threatened by Mr. Mitchem.[49] On these facts, the Court concludes that the jury lacked a sufficient evidentiary basis to conclude that Corporal Spence's failure to charge Mr. Mitchem with terroristic threatening amounted to an equal protection violation.

Mr. Pitts also raises Corporal Spence's failure to arrest and charge Mr. Wykpisz as support for the jury's verdict, but the Court is persuaded that, as a matter of law, Mr. Pitts and Mr. Wykpisz are not similarly situated in that Mr. Wkypisz was neither a participant nor aggressor in the altercation, but rather a bystander who tried to break up the altercation.[50]  See Startzell v. City of Phila., Pa., 533 F.3d 183, 203 (citing Nordlinger v. Hahn, 505 U.S. 1, 10 (1992))("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"). Accordingly, the Court concludes that Mr. Pitts cannot, as a matter of law, rely upon Corporal Spence's failure to charge Mr. Wkypisz as support for an equal protection violation.

---

[49](D.I. 116 at 45:12-17.)

[50](Id. at 43:7-10; D.I. 118 at 51:5-11.)

As for the crimes charged against Mr. Pitts, the record shows ample support for Corporal Spence's belief that those charges were warranted[51], and in any event, the Court finds no evidence that Corporal Spence acted with a discriminatory purpose in charging Mr. Pitts or in failing to charge others. Mr. Pitts was the first party to introduce race into the dispute,[52] and there is no evidence that Corporal Spence's actions were in any way motivated by racial animus. In these circumstances, the Court cannot conclude that a sufficient evidentiary basis exists for the jury's verdict that Corporal Spence violated Mr. Pitts' rights to equal protection. Given the lack of evidence of discriminatory purpose presented by Mr. Pitts, the Court therefore concludes that Corporal Spence is entitled to judgment as a matter of law on Mr. Pitts' equal protection claim.

To the extent that Mr. Pitts relies upon the search and tow of Mr. Pitts' vehicle to support the jury's equal protection violation, the Court concludes that the evidence is insufficient

---

[51] For example, Mr. Pitts suggests that he should not have been charged with assault; however, Mr. Pitts admitted at trial that he had a physical altercation with Mr. Mitchem, that he punched him and knocked him to the ground. (D.I. 116 at 15:15-21.) Although Mr. Pitts testified that he was not injured, Mr. Mitchem testified that he twisted his ankle after falling. (D.I. 118 at 50:24.) In light of this testimony, the Court finds no evidentiary basis to support the jury's implicit finding, in its equal protection verdict in favor of Mr. Pitts, that these charges were baselessly brought against Mr. Pitts or that they were the result of differential treatment.

[52] (D.I. 116, at 24:17-20.)

as a matter of law to demonstrate that this search amounted to differential treatment. Mr. Mitchem's truck was parked and secured at his own shop, and Mr. Pitts' vehicle was not on his own property.[53] Corporal Spence testified that he had multiple concerns about leaving Mr. Pitts' car behind, including a fear that Mr. Pitts' car could be damaged by Mr. Mitchem, who had already done some damage to it, and a concern that if Mr. Pitts retrieved the car at a later time another altercation would follow.[54] Corporal Spence asked Mr. Pitts if there was someone available to retrieve his car because he wanted him to have the opportunity to be able to remove it without towing it; however, Mr. Pitts informed Corporal Spence that no one was available to retrieve the car.[55] Corporal Spence also testified that he feared liability on his behalf if the car were to be further damaged.[56] The testimony of Corporal Spence in this regard indicates no discriminatory motive, and Mr. Pitts has not otherwise demonstrated a discriminatory motive in Corporal Spence's decision to tow Mr. Pitts' vehicle. Mr. Pitts introduced no evidence that all vehicles must be towed if the owner of a vehicle is arrested, and Mr. Pitts points to no

---

[53](D.I. 118, at 125:9-15; 126:4-8.)

[54](Id.)

[55](Id. at 123:2-12; 125:16-17.)

[56](Id. at 121:19-25; 122:1-3)

24

evidence in the record to justify his argument that a
discriminatory reason existed to tow and search Mr. Mitchem's
vehicle. At trial Mr. Pitts testified that Mr. Mitchem
threatened him with a gun and that the presence of this alleged
weapon justified a tow and search of Mr. Mitchem's vehicle, but
at the time of the incident, Mr. Pitts failed to relay this
information to Corporal Spence.[57] In these circumstances, Mr.
Mitchem's alleged possession of a weapon cannot be a basis to
assert that Mr. Mitchem's vehicle should have been searched.
Accordingly, the Court finds no evidence in the record to support
a conclusion that the tow of Mr. Pitts' vehicle constituted
differential treatment constituting an equal protection
violation.

Finally, the Court finds no evidentiary basis to support Mr.
Pitts' contention that differential treatment is evidenced by the
manner in which Corporal Spence investigated and documented the
altercation. The testimony is undisputed that Mr. Pitts refused
to speak with Corporal Spence,[58] and therefore, any gaps in the
police report concerning Mr. Pitts' point of view are
attributable to his own lack of cooperation. More importantly,
the evidence demonstrates no suggestion of a discriminatory
motive or purpose by Corporal Spence in regard to his

---

[57] (Id. at 94:13-17.)

[58] (D.I 116, at 26:12-13; D.I. 118, at 93:15-17.)

investigation and documentation of the incident, particularly since Corporal Spence attempted to interview Mr. Pitts so as to obtain his version of the events.

Mr. Pitts relies extensively on the Third Circuit's decision in Carrasca v. Pomeroy, 313 F.3d 828 (3d Cir. 2002) to support his equal protection argument. In Carrasca, the Third Circuit reversed and remanded the District Court's grant of summary judgment in favor of the defendant park rangers concluding that a factual issue existed as to whether the defendant park rangers engaged in racial profiling and selectively enforced the park's swimming hours against the plaintiffs, who were Mexican. The record contained evidence that the defendant park rangers arguably used a racial slur such that a fact finder could determine that the defendant park rangers acted with a racially discriminatory motive. Unlike the Carrasca case, this case proceeded to a trial on the merits, and based on the evidence adduced at trial, the Court finds no evidentiary basis for a reasonable jury to conclude that Corporal Spence's conduct was motivated by a discriminatory purpose. Both of the participants in the altercation, Mr. Pitts and Mr. Mitchem, were arrested and charged with crimes. The circumstances here are not akin to the racial profiling that potentially existed on the facts presented to the Third Circuit in Carrasca, and the Court concludes, as a matter of law based upon the full exposition of the facts adduced at trial, that Mr. Pitts has failed to prove an equal protection

violation.

In sum, the Court concludes that the jury's verdict in favor of Mr. Pitts on his equal protection claim is not supported by the evidence. The Court further concludes, as a matter of law, that Mr. Pitts has not demonstrated the elements required to prove, by a preponderance of the evidence, an equal protection violation. Accordingly, the Court will grant judgment as a matter of law in favor of Corporal Spence on Mr. Pitts' equal protection claim.

## MR. PITTS' MOTION FOR ATTORNEYS' FEE AND EXPENSES; REAL WORLD LAW'S MOTION NUNC PRO TUNC FOR ATTORNEY'S FEES AND EXPENSES

### I. Parties' Contentions

By his Motion, Mr. Pitts contends he is entitled to receive attorneys' fees for his court-appointed attorneys and expenses under 42 U.S.C. § 1988 because, as a result of the jury verdict, Mr. Pitts has prevailed against Corporal Spence on his illegal search and seizure and equal protection claims. (D.I. 115, at 1-2.) Mr. Pitts further contends that the fees requested by his court-appointed counsel are reasonable. (Id. at 3-4.) In response, Corporal Spence contends that the fees requested by Mr. Pitts are excessive and unreasonable. (D.I. 119, at 5, 7.)

By its Motion, Third Party Real World Law also requests attorneys' fees and expenses under 42 U.S.C. § 1988, for their representation of Mr. Pitts between December 2006 until October

27

2007. (D.I. 129.) During this time frame, Real World Law contends that it "participated in discovery on Mr. Pitts' behalf and in summary judgment motion practice." Thus, Real World Law contends that "Mr. Pitts prevailed at trial, in part, because [Real World Law] was able to refute Corporal Spence's arguments in summary judgment." (Id. at ¶¶ 5, 12.)

Both Mr. Pitts and Corporal Spence have responded to Real World Law's motion. Mr. Pitts contends that Real World Law lost any right to compensation because it withdrew from the case unjustifiably without cause, and without Mr. Pitts' consent. (D.I. 130, at 2.) Corporal Spence contends that Real World Law's Motion lacks the supporting documentation necessary to sustain an award of attorneys' fees and expenses. (D.I. 131, at 2-3.)

## II. Discussion

Civil litigants are generally responsible for their own attorneys' fees; however, the court may, in its discretion, allow a prevailing party in a Section 1983 action to recover reasonable attorneys' fees as part of the costs. Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002); 42 U.S.C. § 1988(b). For purposes of Section 1988, a "prevailing party" is a party who has "succeed[ed] on nay significant issues in litigation which achieves some of the benefit the part[y] sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citations omitted).

When a judgment in favor of a Mr. Pitts is reversed on the merits, that party is no longer a 'prevailing party' under 42 U.S.C. § 1988 and no longer entitled to attorneys' fees under that statute. Clark v. Twp. of Falls, 890 F.2d 625, 626-27 (3d Cir. 1989). Indeed, Mr. Pitts has acknowledged "that if the Court grants [D]efendant's motion for judgment as a matter of law in its entirety, that [P]laintiff is not entitled to an award of fees." (D.I. 122, at 2.) Because the Court has granted judgment as a matter of law in favor of Corporal Spence, the Court concludes that Mr. Pitts is no longer a "prevailing party" within the meaning of § 1988, and therefore, Mr. Pitts is not entitled to attorneys' fees. Accordingly, the Motions filed by Mr. Pitts and Real World Law will be denied.

## CONCLUSION

For the reasons discussed, Corporal Spence's Motion for Judgment as a Matter of Law (D.I. 111) is granted and the Motions For Attornesys' Fees and Expenses (D.I. 112, 128) filed by Mr. Pitts and Real World Law are denied.

An appropriate order will be entered.